UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARK HUNDLEY,

        Plaintiff,

   v.

MICHAEL L. FRIEDMAN, M.D., et al.,

        Defendants.
                                 /

No. C 05-0068 SI (pr)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Mark Hundley filed this pro se civil rights action under 42 U.S.C. § 1983, claiming that defendants were deliberately indifferent to his inguinal hernia. Defendants have moved for summary judgment on the grounds that no triable issue of material fact exists on Hundley's deliberate indifference to medical needs claim and that qualified immunity protects defendants from liability for the acts alleged in the complaint. For the reasons discussed below, the motion for summary judgment will be granted.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

Hundley is and at the relevant time was an inmate at the Correctional Training Facility (CTF) in Soledad. Defendants Cesar Sinnaco and Inderjit Grewal were staff physicians at CTF, defendant Michael Friedman was the chief medical officer at CTF, and defendant N. Grannis was the chief of inmate appeals for the California Department of Corrections.

1  This case concerns the treatment of an inguinal hernia, a condition which all parties agree
2  Hundley had. His treating doctors diagnosed the hernia as a reducible one, but Hundley
3  contends it was an irreducible hernia. According to defendants, a reducible inguinal hernia is
4  one in which the protrusion from the patient's abdomen may slide back and forth as pressure on
5  the abdomen changes. Rarely, the protrusion swells and becomes too large to slide back through
6  the opening in the abdominal muscle wall. This loop is then trapped outside of the abdomen and
7  deemed incarcerated. Surgery is warranted when the hernia becomes incarcerated.

> The fact that a hernia is "reducible," meaning that the protrusion from the patient's abdomen can slide back and forth as pressure on the abdomen changes, describes a condition, <u>not</u> a treatment. Conservative treatment for a reducible inguinal hernia may include prescription of a hernia truss, which presses the protrusion back inside the abdominal wall opening. In some instances, use of such a hernia truss may allow the opening in the abdominal wall to heal without surgery. If an inguinal hernia does not respond to such conservative treatment, surgical repair, in which the protrusion is replaced inside the abdominal muscle wall opening which is then surgically closed, may be warranted.

13  Supplemental Friedman Decl., ¶ 3. Surgery also is generally warranted when a hernia becomes
14  incarcerated.

15  On August 28, 2003, Dr. Sinnaco diagnosed Hundley with a reducible right inguinal
16  hernia. Hundley informed Dr. Sinnaco that his condition had arisen about four months earlier
17  and was causing him discomfort and pain. Dr. Sinnaco decided to treat it conservatively. He
18  prescribed Hundley use of a hernia truss, and provided Hundley a medical "chrono" restricting
19  the amount he could lift, pull or push to less than 25 pounds for the next year.

20  On May 21, 2004, Dr. Sinnaco again examined Hundley and determined his condition
21  remained essentially the same. He determined that conservative treatment was still warranted
22  and surgery was not medically indicated. Dr. Sinnaco provided Hundley with a prescription for
23  Tylenol for the pain and advised him to continue using the hernia truss. During this
24  examination, Hundley insisted that the hernia be surgically repaired, so Dr. Sinnaco referred him
25  to Dr. Grewal for a second opinion regarding the prognosis and treatment of the hernia.

26  Five days later, on May 26, 2004, Dr. Grewal examined Hundley and also determined that
27  Hundley had a reducible right inguinal hernia. Following the examination, Dr. Grewal explained
28  his findings and informed Hundley of the appropriate conservative treatment (i.e. a truss), but

2

Hundley still insisted on having surgery. Dr. Grewal therefore prepared a Health Care Services Physician Request for Services so that Hundley's request for surgery could be evaluated by the Health Care Services Utilization Management Committee/Medical Authorization Review (UMC/MAR) Committee.

The UMC/MAR Committee is an oversight committee that meets approximately once a month and acts upon requests for treatment related to medical services. The committee has the authority to approve, deny, or defer requests for treatment. Dr. Friedman, the chief medical officer (CMO) at CTF, chaired the UMC/MAR Committee. Dr. Friedman was not one of Hundley's treating physicians. His participation in Hundley's case was in his role as CMO and member of the UMC/MAR Committee.

On or about May 27, 2004, the UMC/MAR Committee met and determined that the requested surgery was not warranted. The UMC/MAR Committee deferred Hundley's request for immediate surgery, deciding that the request should be reviewed again "when Plaintiff is more symptomatic or in six months." Friedman Decl., Exh. B. The committee also ordered that Hundley's work and physical exertion restrictions remain in effect.

On June 2, 2004, Hundley filed an inmate appeal at the second level of review in which he complained he was in pain and this pain affected his daily activities. He requested immediate surgery. On June 17, 2004, Dr. Dinh evaluated Hundley and informed him that the UMC/MAR Committee had deferred his request for surgery. On July 20, 2004, Dr. Dinh reexamined Hundley and prescribed him Tylenol.

On July 27, 2004, Dr. Friedman issued a decision on Hundley's inmate appeal, determining that surgery was not medically indicated based on the UMC/MAR Committee's review of Hundley's case factors. Hundley's second level appeal was partially granted insofar as the UMC/MAR Committee deferred his request for immediate surgery, and CTF medical staff would continue to monitor his condition to determine if surgery was warranted in the future. On or about October 18, 2004, Grannis, chief of inmate appeals, drafted the director's level appeal decision denying Hundley's appeal based on the findings made by the staff physicians that the surgery was not medically necessary at the time.

On May 25, 2005, after further conservative treatment did not resolve Hundley's condition, Dr. Grewal's Physician Request for Services was approved, and Hundley's surgery was scheduled to be performed on July 18, 2005. The surgery did not take place as scheduled, so on September 14, 2005, Hundley filed an inmate appeal requesting that the hernia be surgically repaired as planned. This appeal was granted and the surgery was performed on September 29, 2005.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to Hundley's claim occurred at CTF in Monterey County, located in the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, as is the situation with defendants' challenge to the Eighth Amendment claim, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the

4

nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

Where, as is the situation with defendants' qualified immunity defense, the moving party bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. See Houghton v. Smith, 965 F.2d 1532, 1536 (9th Cir. 1992). It must establish the absence of a genuine issue of fact on each issue material to its affirmative defense. Id. at 1537; see also Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. When the defendant-movant has come forward with this evidence, the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue of fact on the defense.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Hundley's verified complaint as well as his declaration will be considered in opposition to defendants' motion for summary judgment.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. Id. at 631.

**DISCUSSION**

A.  Deliberate Indifference to Medical Needs Claim

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Accordingly, evaluating a claim of deliberate indifference necessitates examining the seriousness of the prisoner's need and the nature of the defendant's response. See McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Id. A prison official exhibits deliberate indifference when he knows of and disregards a substantial risk of serious harm to inmate health. See Farmer, 511 U.S. at 837. The official must both know of "facts from which the inference could be drawn" that an excessive risk of harm exists, and he must actually draw that inference. Id. A mere difference of opinion as to which medically acceptable course of treatment should be followed does not establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Where doctors have chosen one course of action and a prisoner-plaintiff contends that they should have chosen another course of action, the plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, . . . and the plaintiff must show that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.), cert. denied, 519 U.S. 1029 (1996).

The parties do not dispute that Hundley's inguinal hernia was a serious medical condition. The issue here is whether there is a triable issue of fact that defendants were deliberately indifferent to it. Hundley's inguinal hernia was observed numerous times, and his medical condition and health issues were monitored and treated by his physicians. During the time

6

period in question, the records show Hundley had been issued a hernia truss, had received a medical "chrono" restricting his physical activities, was not in acute distress, was comfortable in appearance, and was not complaining of severe abdominal pain. Thus, based on Hundley's medical condition, his doctors considered surgical repair of hernia to be elective surgery, and the risks outweighed the benefits until his condition worsened or his abdominal pain became more pronounced.

Hundley has not established a triable issue of fact that either Dr. Sinnaco or Dr. Grewal was deliberately indifferent to his inguinal hernia. Dr. Sinnaco examined Hundley twice and determined that conservative treatment was appropriate because the hernia was reducible. He gave Hundley a medical "chrono" restricting the amount of work he could do and prescribed a hernia truss. Dr. Sinnaco also referred Hundley to Dr. Grewal for a second opinion. Dr. Grewal also found that the hernia was reducible, and thus amenable to conservative treatment. When Hundley insisted that surgery be performed, Dr. Grewal presented his request for surgery to the UMC/MAR Committee. The committee deferred the request, finding that surgery was not warranted at the time because conservative treatment was an acceptable first approach.

Hundley contends that the hernia was not reducible since he eventually required surgery. However, as Dr. Friedman explains in his supplemental declaration, the fact that an inguinal hernia is reducible describes a condition, not a treatment. The hernia was diagnosed as reducible since the protrusion could slide back and forth as the pressure on the abdomen changed. Because of this diagnosis, conservative treatment could work, according to Dr. Friedman's opinion. Hundley presents an excerpt from an encyclopedia to support his argument that surgery is the appropriate treatment for a hernia. Specifically, the excerpt states that "surgery is the best treatment for a hernia. Your physician may advise you to wear a supportive corset or truss until you have the operation, but this is usually only a temporary measure." Pl. Decl. in Opp'n Def. Mot. Summ. J., Exh. C. However, the excerpt also notes that there are "various methods of treatment" and that "[m]ost hernias can simply be pushed back through the muscle opening into place." Id. The excerpt shows that there are alternative approaches to treating a hernia. Although Hundley feels that surgery was the appropriate treatment and contends that the medical

7

staff improperly chose conservative treatment, this difference of opinion does not establish deliberate indifference. Hundley fails to raise a triable issue of fact that the doctors' chosen course of action was medically unacceptable under the circumstances and that they made that choice in conscious disregard of an excessive risk to his health. Even if the doctors were negligent in their choice of conservative treatment, negligence is not sufficient to amount to deliberate indifference under the Eighth Amendment. <u>Farmer</u>, 511 U.S. at 835-36; <u>see</u> <u>also</u> <u>Estelle</u> 429 U.S. at 106. Dr. Sinnaco and Dr. Grewal are entitled to summary judgment in their favor.

Hundley offers declarations from inmates Kroung and Shealy, who also were diagnosed with hernias that eventually required surgery. Kroung declares that his hernia was surgically repaired five months after the diagnosis. Pl. Decl. in Opp'n Def. Mot. Summ. J., Exh. D. Shealy declares that his hernia was operated on one year after the diagnosis. <u>Id.</u>, Exh E. Hundley contends that the fact that Kroung and Shealy received their operations months before him suggests that defendants were deliberately indifferent to his inguinal hernia. The declarations are not signed and are therefore inadmissible for summary judgment purposes. Even if they were signed, they would not change the outcome. As Hundley's book excerpt explains, there are various methods of treatment. The need for surgery depends on the circumstances of each specific case. Because there is not a "one size fits all" approach with hernias, the declarations do not establish deliberate indifference here.

Hundley also has failed to raise a triable issue of fact on his claim that Dr. Friedman was deliberately indifferent to his inguinal hernia. It is undisputed that Dr. Friedman did not treat Hundley and his liability would stem only from his actions as the chief medical officer and membership on the UMC/MAR committee. A prison official who receives an inmate appeal complaining of an ongoing serious risk to an inmate's health might be liable under the Eighth Amendment if he is in a position to abate the risk and fails to do so. However, the court need not decide whether there can be liability under such a theory because, even if there is such liability, the evidence does not show a factual basis for it here. Specifically, the treating doctors had examined the patient and determined to use a conservative treatment approach to the

1 inguinal hernia. Hundley has not shown that the treatment plan chosen amounted to deliberate
2 indifference.

3 Even though the committee deferred Hundley's request for surgery, it ordered that his
4 situation be reviewed within six months. When the hernia did not resolve with conservative
5 treatment, surgery was approved and the hernia was surgically repaired. The surgery's deferral
6 does not establish deliberate indifference because conservative treatment could resolve or
7 manage the hernia. There was no deferral after it became clear that conservative treatment was
8 not enough. Dr. Friedman's initial decision to deny Hundley's request was appropriate under
9 the circumstances.[1]

10 Although the surgery was initially scheduled for July 18, 2005, it was delayed until
11 September 29, 2005. The parties do not dispute that the surgery was delayed, but the delay is
12 not a triable issue of fact. The doctors categorized the treatment as routine surgery, and Hundley
13 has not presented evidence that any adverse consequences occurred as a result of the delay.
14 Moreover, Hundley presents no evidence that any defendant played a role in causing the delay.
15 Accordingly, the delayed surgery does not establish deliberate indifference.

16 Finally, Hundley does not offer any evidence that N. Grannis was deliberately indifferent
17 to his medical needs. Grannis, as Chief of the Inmate Appeals Branch, drafted the Director's
18 level appeal decision denying Hundley's appeal of the UMC/MAR Committee's decision. This
19 denial was made after reviewing the examinations made and treatment provided by Dr. Sinnaco
20 and Dr. Grewal. Reasoning that "decisions for surgery are best left to physicians" and that
21 Hundley was to be reevaluated within six months, Grannis reasonably concluded that there was
22 no cause to intervene. See Russell Decl., Exh. D. Because the treating physicians were
23 following an acceptable treatment plan, it follows that the people who denied Hundley's
24 grievances were also not deliberately indifferent to his medical needs. Consequently, Grannis

---

[1] Dr. Friedman also has no liability on either a respondeat superior or a vicarious liability theory because "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor is "only liable for constitutional violations of his subordinates, if the supervisor participated in or directed the violations or knew of the violations and failed to prevent them." Id.

9

is entitled to summary judgment in her favor.

Even viewing the evidence and the inferences therefrom in the light most favorable to Hundley, he has not raised a triable issue of fact that defendants consciously disregarded a known serious medical need or a substantial risk of serious harm to his health. No reasonable jury could find that defendants were deliberately indifferent to Hundley's medical needs. Summary judgment will be granted in favor of defendants.

B.    Qualified Immunity

The defense of qualified immunity protects government officials from civil liability insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the late.'" Burns v. Reed, 500 U.S. 478, 495 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The first step under Saucier is to determine whether a constitutional violation was alleged. As discussed in the section above, the evidence in the record does not establish an Eighth

10

Amendment violation. Defendants met their burden of proof in their moving papers. Hundley did not introduce any evidence to show the existence of a genuine issue of fact on the defense. There is no need to proceed to the second step under Saucier where the case falters on the first step. Defendants are entitled to judgment as a matter of law on their qualified immunity defense.

C.     Miscellaneous Matters

   1.     Hundley's Motion to Compel Discovery

Hundley filed a motion to compel discovery (Docket # 26). This motion is DENIED because discovery was stayed pending the decision on the summary judgment motion raising the qualified immunity defense.

   2.     Hundley's Motion to Appoint Counsel

Hundley filed a motion for appointment of counsel to represent him in this action. (Docket # 29.) A district court has discretion under 28 U.S.C. § 1915(e)(1) to designate counsel to represent an indigent civil litigant in exceptional circumstances. See Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). This requires evaluation of both the likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. See id. Neither of these factor is dispositive and both must be viewed together before deciding on a request for counsel under section 1915(e)(1). Having considered both of these factors, the court concludes that exceptional circumstances requiring the appointment of counsel are not evident. The motion for appointment of counsel is DENIED.

   3.     Defendants' Application For Extension Of Time To Answer

Defendants' ex parte application for an extension of time to file a brief in reply to Hundley's opposition to motion for summary judgment is GRANTED. (Docket # 30.) The brief filed on December 2, 2005 is deemed timely filed.

11

### 4. Defendant Dinh's Service of Process

The court had advised Hundley in the October 24, 2005 order that any unserved defendants would be dismissed if Hundley did not provide a current address for service of process or if the Marshal could not serve a defendant at the address provided. Defendant Dinh could not be served with process by the U.S. Marshal based on the information plaintiff provided and consequently has not appeared in this litigation. The form for service of process for Dr. Dinh stated that service was unsuccessfully attempted at the Gonzales, California address provided by Hundley. (Docket # 35.) Accordingly, defendant Dinh is dismissed as a defendant. This dismissal is without prejudice to plaintiff filing a new action against Dinh if he ever locates him.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. (Docket #14). Defendants are entitled to judgment as a matter of law on the merits of the Eighth Amendment claim and on their qualified immunity defense. Judgment will be entered in defendants' favor and against the plaintiff.

Plaintiff's motion to compel discovery is DENIED. (Docket # 26.)

Plaintiff's motion for appointment of counsel is DENIED. (Docket # 29.)

Defendants' ex parte application for extension of time is GRANTED. (Docket # 30.)

IT IS SO ORDERED.

Dated: July 21, 2006

_____
SUSAN ILLSTON
United States District Judge